TONY TAMBURELLO (CSBN 46037)
Attorney at Law
214 Duboce Avenue
San Francisco, CA 94103
Telephone: 415.431.4500
tony@tonytamburello.com

SARAH POTTER (CSBN 280478)
Law Office of Sarah Potter
1663 Mission Street, Suite 200
San Francisco, CA 94103
Telephone:  415.864.5600
Facsimile:  415.423.3447
sarah@sarahpotterlaw.com

Attorneys for Defendant
LUPE MERCADO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>    vs.<br><br>LUPE MERCADO, et al.,<br><br>             Defendant. | Case No. 13-CR-00764-WHO<br><br>**DEFENANT LUPE MERCADO'S MOTION FOR JUDGMENT OF ACQUITTAL (Fed. R. Crim. P. 29)** |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that as soon as the matter may be heard by this Court, counsel for LUPE MERCADO will, and hereby does, move this Court for a Judgment of Acquittal on Counts Two, Three, Four, and Five of the Superseding Indictment filed on January 9, 2014. Defendant brings this motion pursuant to Federal Rule of Criminal Procedure 29.

The motion is based on this notice, the memorandum of points and authorities, any further exhibits, pleadings, and documents on file in this matter, and any additional evidence, and argument, as may be presented at the hearing on this motion.

Dated: February 28, 2020                                 Respectfully Submitted


                                                        */s/ Sarah Potter*
                                                        TONY TAMBURELLO
                                                        SARAH POTTER
                                                        Attorneys for Defendant
                                                        LUPE MERCADO

**Table of Contents**

I. INTRODUCTION ........................................................................................................... 1

II. PROCEDURAL BACKGROUND ................................................................................. 1

III. LEGAL STANDARD ..................................................................................................... 1

IV. ARGUMENT .................................................................................................................. 2

    A. This Court Lacks Jurisdiction Over the Charges Against Ms. Mercado ............................................................................................................ 2

    B. No Rational Juror Could Conclude the Government Has Proved Its Case Against Ms. Mercado Beyond a Reasonable Doubt ....................................... 2

        1. The Government Had to Prove Beyond a Reasonable Doubt That Ms. Mercado's Substantial Purpose Was to Maintain or Increase a CDP Member's Standing ............................................................. 3

        2. No Evidence Allows a Rational Juror to Conclude Beyond a Reasonable Doubt That Ms. Mercado Acted to Maintain or Increase Anyone's Standing in CDP .............................................................. 7

        3. Because Count Two Fails, the Remaining Counts Against Ms. Mercado Fail As Well ....................................................................... 11

V. CONCLUSION ............................................................................................................. 12

Page i

LUPE MERCADO'S MOTION FOR JUDGMENT ACQUITTAL (Fed. R. Crim. P. 29)

# Table of Authorities

**Cases**

*Jackson v. Virginia*,
  443 U.S. 307 (1979) ............................................................................................................. 2

*Juan H. v. Allen*,
  408 F.3d 1262 (9th Cir. 2005) ........................................................................................... 10

*Rosemond v. United States*,
  572 U.S. 65 (2014) ............................................................................................................. 6

*United States v. Banks*,
  514 F.3d 959 (9th Cir. 2008) ...................................................................................... passim

*United States v. Barbeito*,
  No. 2:09 Cr. 00222, 2010 WL 2243878 (S.D. W. Va. 2010) ............................................. 4

*United States v. Carreno-Juarez*,
  No. 08CR2698 BTM, 2009 WL 605077 (S.D. Cal. Mar. 9, 2009) ................................... 12

*United States v. Christensen*,
  828 F.3d 763 (9th Cir. 2015) ............................................................................................. 2

*United States v. Concepcion*,
  983 F.2d 369 (2d Cir. 1992) ............................................................................................... 3

*United States v. Frampton*,
  382 F.3d 213 (2d Cir. 2004) ........................................................................................ passim

*United States v. Howard*,
  414 F. Supp. 3d 580 (S.D.N.Y. 2019) ............................................................................... 4

*United States v. Innie*,
  7 F.3d 840 (9th Cir. 1993) ............................................................................................... 12

*United States v. Jones*,
  291 F. Supp. 2d 78 (D. Conn. 2003) ......................................................................... 1, 4, 9

*United States v. Nevils*,
  598 F.3d 1158 (9th Cir. 2010) (en banc) ........................................................................... 2

*United States v. Saavedra*,
  223 F.3d 85 (2d Cir. 2000) ................................................................................................. 6

*United States v. Thai*,
  29 F.3d 785 (2d Cir. 1994) ......................................................................................... 3, 5, 9

*United States v. Young*,
  720 F. App'x. 846 (9th Cir. 2017) ..................................................................................... 3

**Table of Authorities (cont.)**

**Statutes**

18 U.S.C. § 3 ................................................................................................................................12

18 U.S.C. § 1959 .........................................................................................................................1, 3

**Other Authorities**

S.Rep.N.O.225, 304, reprinted in 1984 USCCAN at 3483 ............................................................3

**Rules**

Fed. R. Crim. P. 29 .........................................................................................................................2

**Treatises**

2A C. Wright & A. Miller, Federal Practice & Procedure Criminal § 462 (4th Ed. 2019)..............8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Ms. Mercado asks for acquittal on all counts against her because the government has failed to introduce evidence that would permit a rational juror to conclude Ms. Mercado acted with the substantial purpose to improve the standing of CDP members.  The government alleges Ms. Mercado aided and abetted the murder of a pimp who exploited her seventeen-year-old daughter. Viewing the evidence in the light most favorable to the prosecution, Ms. Mercado's actions "bear no tangible connection to" CDP members' standing in the gang or its activities and, "to the contrary . . . resulted from a purely personal dispute."  *United States v. Jones*, 291 F. Supp. 2d 78, 87 (D. Conn. 2003) (granting Rule 29 motion on VICAR count).  The government's legal theory and evidence at trial do not allow a rational juror to convict Ms. Mercado on any count in the Superseding Indictment.  Ms. Mercado asks this Court to enter judgment of acquittal.

## II.    PROCEDURAL BACKGROUND

Ms. Mercado's case was set to go to trial for the alleged murder of Calvin Sneed in San Francisco Superior Court on December 2, 2013.  But on November 21, 2013, the United States Government in the Northern District of California aborted her state proceedings when they indicted her. (ECF No. 1.)  The Superseding Indictment charges Ms. Mercado with the murder of Calvin Sneed under Count Two in violation of 18 U.S.C. §§ 2 and 1959(a)(1); under Count Three in violation of 18 U.S.C. § 924(c)(1)(A) and § 2; under Count Four in violation of 18 U.S.C. § 924(j) and § 2; and under Count Five in violation 18 U.S.C. § 3.  (ECF No. 31.)

On January 10, 2020, Ms. Mercado moved to dismiss the Superseding Indictment for lack of jurisdiction. (ECF No. 2225.)  This Court denied the motion without prejudice to Ms. Mercado renewing it as a Rule 29 motion at the conclusion of the government's case.  (ECF No. 2233.)

## III.   LEGAL STANDARD

A defendant may move for a judgment of acquittal after the government closes its evidence. Fed. R. Crim. P. 29(a).  A Court should enter judgment of acquittal when there is insufficient evidence to sustain a conviction.  *Id.*  The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find the essential elements

of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015). A guilty verdict requires more than a "mere modicum" of supporting evidence. *Jackson,* 443 U.S. at 320.

The Ninth Circuit, en banc, has clarified the Rule 29 standard: "Although *Jackson* requires the reviewing court initially to construe all evidence in the favor of the government, the evidence so construed may still be so supportive of innocence that no rational juror could conclude that the government proved its case beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir.2010) (en banc) (citations omitted). As relevant here, "evidence is insufficient to support a verdict where mere speculation, rather than reasonable inference, supports the government's case" or "where there is a 'total failure of proof of [a] requisite' element." *Id.*

## IV.    ARGUMENT

### A.    This Court Lacks Jurisdiction Over the Charges Against Ms. Mercado

Before trial, Ms. Mercado moved to dismiss all charges in the Superseding Indictment for lack of jurisdiction. (ECF No. No. 2225.) This Court denied the motion without prejudice to Ms. Mercado renewing it as a Rule 29 motion at the conclusion of the government's case. (ECF No. 2233.) Ms. Mercado renews the arguments made in the motion to dismiss and requests an order dismissing all charges in the Superseding Indictment for the reasons stated in her previous briefing, which is incorporated here by reference, and for the additional reasons set out below.

### B.    No Rational Juror Could Conclude the Government Has Proved Its Case Against Ms. Mercado Beyond a Reasonable Doubt

Along with the arguments raised in Ms. Mercado's motion to dismiss for lack of jurisdiction, the charges against her fail because no rational juror could conclude that the government proved its case beyond a reasonable doubt. This Court should enter judgment of acquittal on Count Two because the government presented ***no*** evidence to satisfy VICAR's motive prong. Counts Three, Four, and Five depend elementally upon Count Two, and if no evidence supports a conviction under Count Two, the balance of the remaining charges also fail. This Court should enter a judgment of acquittal as to Ms. Mercado.

//

### 1. The Government Had to Prove Beyond a Reasonable Doubt That Ms. Mercado's Substantial Purpose Was to Maintain or Increase a CDP Member's Standing

Count Two of the Superseding Indictment charges Ms. Mercado with violating 18 U.S.C. § 1959(a), which prohibits violent crimes committed to further interstate racketeering activity. "[T]he statute targets violent crimes that are integrally related to criminal organizations or membership therein." *United States v. Banks*, 514 F.3d 959, 967 (9th Cir. 2008). Individuals can be convicted under Section 1959 only if they commit a violent act for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, or if they are hired by a racketeering enterprise to carry out a violent act on behalf of the enterprise. *United States v. Young*, 720 F. App'x. 846, 850 (9th Cir. 2017).

The central issue for the VICAR count is whether a reasonable fact finder can conclude from the evidence in the record that the defendant's "general purpose" in shooting the victim "was to maintain or increase his [or her] position in the racketeering enterprise." *United States v. Thai*, 29 F.3d 785, 817 (2d Cir. 1994). The VICAR statute requires that the violent act have been committed "as an integral aspect of membership" in the racketeering enterprise. S.Rep.N.O.225, 304, reprinted in 1984 USCCAN at 3483. While it is not required that commission of a violent act be the defendant's sole or principal motive, the evidence must support an inference that "the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the racketeering enterprise or that he committed it in furtherance of that membership." *United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992). While "the gang or racketeering purpose does not have to be the only purpose or the main purpose of the murder or assault . . . it does have to be a substantial purpose." *Banks*, 514 F.3d at 969.

But "[t]he VICAR statute itself contains no indication that Congress intended it to make gang membership a status offense such that mere membership plus proof of a criminal act would be sufficient to prove a VICAR violation." *Id.*, 514 F.3d at 968. That kind of sweeping application "would risk extending VICAR to any violent behavior by a gang member under the presumption that such individuals are always motivated, at least in part, by their desire to maintain their status within the gang." *Id.* "Otherwise, every traffic altercation or act of domestic violence, when committed by a gang member, could be prosecuted under VICAR as well." *Id.*

As relevant here, it is impermissible to convict a defendant under the VICAR statute when the substantial purpose is personal and any gang connection is merely incidental. *Banks*, 514 F.3d at 968 (holding that it was impermissible to "convict [the defendant] on the VICAR counts even if it found that his battle with [the victim] was generally motivated by personal animosity and by a desire to regain the respect and affection of his girlfriend"). Consistent with *Banks*, a number of cases "reject[] the assumption that any violence in response to a personal affront to a member of an enterprise can satisfy VICAR's motive prong." *United States v. Howard*, 414 F. Supp. 3d 580, 600 (S.D.N.Y. 2019) (collecting cases).[1]

For example, in *United States v. Jones*, the court granted defendant's Rule 29 motion on a VICAR count, concluding that "the factual circumstances surrounding the [alleged VICAR] murder bear no tangible connection to [defendant's] leadership of the Enterprise or its drug-trafficking activities. To the contrary, the murder resulted from a purely personal dispute between [victim] and [defendant's girlfriend] that arose when she spurned [victim's] romantic advances." 291 F. Supp. 2d at 87. The court also rejected "[t]he government's argument that any personal act of disrespect toward [the defendant] was tantamount to an act of disrespect against the [e]nterprise," because that theory "blurs *Concepcion*'s distinction between violent crimes that are committed in connection with a criminal enterprise's affairs and those that arise from purely non-enterprise-related matters." *Id.* at 89. The court reasoned that the government's theory would mean "any act of violence committed by a member of a[n enterprise], whether related to its [] objectives or not, would be a VICAR offense." *Id.*

Similarly, in *United States v. Barbeito*, the court held that "the operative question" for VICAR's motive element "is whether the defendant had the purpose of cultivating the enterprise's reputation for violence in mind, as opposed to a personal motivation, when committing the act of violence." No. 2:09 Cr. 00222, 2010 WL 2243878, at *19 (S.D. W. Va. 2010). In concluding that acts committed out of personal motivation do not satisfy VICAR's motive element, the court noted that other federal "courts have rejected unsupported inferences, proffered by the Government, that

---

[1] The government has appealed the ruling in *Howard*, and that appeal is currently pending in the Second Circuit. *United States v. White (Howard)*, Case No. 19-3833 (2d Cir. filed Nov. 18, 2019). That appeal, however, does not affect the status of the cases cited or discussed in *Howard*.

acts of violence by a member of a racketeering enterprise committed for ostensibly personal reasons were motivated by a desire to increase the member's position." *Id.*; *see also Thai*, 29 F.3d 785 (2d Cir. 1994) (holding that side agreement between a gang leader and third-party to commit a violent act did not satisfy motive element, even though the act was related tangentially to the enterprise's activities).

The government disagrees with these cases, instead arguing that Ms. Mercado can be convicted under a VICAR count without satisfying VICAR's motive prong. (RT at 2000:24-2001:3 ("And that means here Ms. Mercado needs to share the intent to maliciously kill Calvin Sneed. It does not mean that she needs to have her own VICAR purpose. VICAR purpose is a separate element that the principals needs to have. Ms. Mercado does not need that.").) This argument fails for two reasons.

***First***, the government misstates the law on VICAR liability for aider and abettors. *United States v. Frampton*, 382 F.3d 213 (2d Cir. 2004) makes clear that VICAR liability attaches to an aider and abettor only when the government proves that, at the time of the violent act, the defendant (1) "knew that [the person committing the act] was seeking to increase his position [in the criminal enterprise]" and (2) "acted towards that end." *Id.* at 223 ("Applied to the facts of the present case, the burden was on the Government to prove that at the time Johnson assaulted Henry, he knew that Frampton was seeking to increase his position in the 41 Ingalls enterprise and acted toward that end.").

This requirement that the aider and abettor have a personal motivation to further a racketeering enterprise or improve someone's standing in the enterprise is consistent with the purpose of the VICAR statute. *See United States v. Saavedra*, 223 F.3d 85, 91 (2d Cir. 2000) ("[T]he furtherance of one's position in a racketeering enterprise is precisely what brings otherwise unrelated acts within the purview of a § 1959 prosecution[.] Unlike criminal laws that proscribe isolated acts of violence (local actions in the common law), § 1959 is aimed at those kinds of violent crimes committed as part and parcel of membership in a RICO enterprise."). This is also consistent with general aiding and abetting principles, which hold that "[a]n intent to advance some different or lesser offense is not, or at least not usually, sufficient: Instead, the intent must go to the specific

and entire crime charged—so here, to the full scope [of the predicate statutory crime]." *Rosemond v. United States*, 572 U.S. 65, 76 (2014).

The government's strained theory that it can convict Ms. Mercado for furthering a racketeering enterprise without showing that she knew or intended to further a racketeering enterprise is unsupported by case law or logic. While Ms. Mercado need not have acted to increase *her* standing in CDP (because she wasn't a member), the government must show that that she (1) *knew* and (2) *intended* that her actions would further someone's position in CDP. *Frampton*, 382 F.3d at 223. This Court should reject the government's expansive theory that it need not prove *any* VICAR purpose for Ms. Mercado.

*Second*, assuming the government's legal theory is correct (it is not), the government's own hypothetical presented to the Court shows the hole in its evidence against Ms. Mercado. In explaining its theory, the government posited that a jilted girlfriend seeking the murder of her KOP gang-member boyfriend could satisfy the VICAR motive prong if a CDP gang-member told the girlfriend that "we're looking to kill KOP. They are our rivals." (RT at 2001:4-25.) In that hypothetical, the government believes the girlfriend "knows full well why the CDP member is going to kill the KOP member"—to further the criminal enterprise—and thus a VICAR conviction is appropriate. (*Id.* at 2001:20-21.)

As explained in more detail below, that is exactly the kind of evidence missing from the government's case against Ms. Mercado. There was no evidence presented at trial that (1) Antonio Gilton or any other CDP member murdered Calvin Sneed to further CDP or increase their individual standing in CDP[2] or (2) that Ms. Mercado knew that the murder of Calvin Sneed would further CDP or anyone's standing in CDP. No evidence suggests CDP had a gang rivalry with any organization affiliated with Calvin Sneed, or that Calvin Sneed's pimping of Ms. Mercado's daughter interfered with CDP-related activities. Instead, the evidence shows that everyone who was allegedly involved in this crime—and especially Ms. Mercado—was motivated solely by personal aims to prevent the exploitation of Ms. Mercado's minor daughter. In short, the crucial

---

[2] The government has argued that other defendants' guilty pleas to VICAR offenses show there was an underlying VICAR purpose. (RT at 2004:20-24.) But the guilty pleas were not admitted at trial and, thus, no juror could rely on those to support a conviction against Ms. Mercado.

Page 6
LUPE MERCADO'S MOTION FOR JUDGMENT ACQUITTAL (Fed. R. Crim. P. 29)

evidence that satisfies the VICAR motive element in the government's hypothetical—both the gang-related purpose and the communication of a gang-related purpose to the aider and abettor—is missing in the case against Ms. Mercado.

**2. No Evidence Allows a Rational Juror to Conclude Beyond a Reasonable Doubt That Ms. Mercado Acted to Maintain or Increase Anyone's Standing in CDP**

For the government to prevail on Count Two against Ms. Mercado, it must introduce evidence to establish beyond a reasonable doubt that Ms. Mercado either (1) acted for the purpose of promoting her position in CDP (under a direct theory of liability), *Banks*, 514 F.3d at 964, or (2) with knowledge and intent that her actions would improve CDP members' standing within the enterprise (under an aiding and abetting theory). *Frampton*, 382 F.3d, at 223.

Here, the government's legal theory ignores this standard. In its opening statement, the government argued that it could convict Ms. Mercado if she believed her "status in the eyes of CDP members" would suffer if she didn't seek retribution for her daughter's exploitation, or if Alfonzo Williams and Antonio Gilton's status with CDP would rise or fall depending on their response to Ms. Mercado's daughter's exploitation. (RT at 32:23-33:1.) But the government concedes that Ms. Mercado was not a member or potential member of CDP under a direct theory of liability[3], so her "status in the eyes of CDP members" is irrelevant. And what Alfonzo Williams or Antonio Gilton thought about their personal standing in CDP is also irrelevant for the charges against Ms. Mercado; under the government's aiding and abetting theory[4], the government must show that **Ms. Mercado** knew that CDP members' standing would improve by committing a violent act **and** herself act with that intent. *Frampton*, 382 F.3d at 223. Missing from the government's theory is this crucial elemental link: Ms. Mercado's knowledge and intent to further a criminal enterprise. The lack of a cognizable theory for VICAR liability permeates the government's case against Ms.

---

[3] *See* RT at 1999:23-25 ("Ms. Mercado is not a member of CDP. We are not seeking to prove that she is. She is not charged in Count 1. She never has been.")

[4] *See, e.g.*, RT at 4:18-22 ("In the early morning of June 4th, 2012, Barry Gilton, together with CDP member Alfonzo Williams and CDP member Antonio Gilton, and aided and abetted by Lupe Mercado, drove up to a car driven by Calvin Sneed and shot him in the head, killing him."); 19:2-6 ("Now, the overview of this murder is Alfonzo Williams, Barry Gilton, and Antonio Gilton actually conducted the shooting of Calvin Sneed, and they were aided and abetted in that by Lupe Mercado.").

Mercado, and is grounds for judgment of acquittal. 2A C. Wright & A. Miller, Federal Practice & Procedure Criminal § 462 (4th Ed. 2019) ("It is possible that a court could enter a judgment of acquittal if the government's opening statement unmistakably shows that the evidence it proposes to introduce would not sustain a conviction[.]").

And based on the evidence presented by the government at trial, no rational trier of fact could find that Ms. Mercado acted to promote her position in CDP or with knowledge and intent that her actions would improve any other CDP member's standing within the enterprise. The Government concedes it has no evidence that Ms. Mercado is a member or potential member of CDP, so any theory under direct VICAR liability fails. *Banks*, 514 F.3d at 964 (holding that VICAR liability requires a showing that the defendant acted to promote his or position in the enterprise).

The government's aiding and abetting theory fails too because there is no evidence that she committed any act with knowledge and intent that her actions would improve CDP members' standing within the enterprise. *Frampton*, 382 F.3d at 223 (holding that under aiding and abetting theory for VICAR charge "the burden was on the Government to prove that at the time Johnson assaulted Henry, he knew that Frampton was seeking to increase his position in the 41 Ingalls enterprise and acted toward that end"). The gang evidence on CDP came in through three witnesses, none of whom can satisfy the government's burden.

Johnnie Brown, a former CDP member, could not identify a picture of Ms. Mercado (RT at 462: 11-12) and gave no testimony about her at all. Damon Jackson, the government's San Francisco Gang Task Force expert, testified that he patrolled CDP territory and had a single unremarkable encounter with Ms. Mercado in 2010, which involved Ms. Mercado intervening when an officer asked her fourteen-year-old son to move a car. (RT at 86: 14-15, 311: 24-25.) And Special Agent Millspaugh testified that Antonio Gilton sent Ms. Mercado (whom Antonio Gilton called "mom") a text message to not "lock doors, if you leave" because he was at a barber shop. (RT at 1729:24-1730:6.) This innocuous evidence falls far short of supporting a reasonable inference that Ms. Mercado knew CDP members would murder Calvin Sneed to improve their standing in the gang and acted toward that end.

To the contrary, viewing the evidence in the light most favorable to the government, the

evidence shows (at most) that the motivation for any alleged act by Ms. Mercado was exclusively personal. First, the government's chronology is significant. The government argued that Ms. Mercado "learned that Calvin Sneed was pimping out [her] daughter [and] decided to kill him." (RT at 5:1-3.) And *before* CDP was involved, the government claims Ms. Mercado first "tried to take matters into [her] own hands" by attempting to kill Calvin Sneed in Los Angeles. (*Id.* at 7:5-11.) That Ms. Mercado allegedly tried to kill Calvin Sneed *without* assistance from CDP and *before* any alleged CDP involvement shows that Ms. Mercado was "generally motivated by personal animosity" toward Calvin Sneed for exploiting her daughter, and not motivated to enhance anyone's status within CDP. *Banks*, 514 F.3d at 968. The government's timeline shows that any alleged crime was personally motivated, and thus outside the VICAR statute.[5] *See Jones*, 291 F. Supp. 2d at 87 (granting Rule 29 motion where "murder resulted from a purely personal dispute").

The government struggles to close the motive gap in its case by arguing that Ms. Mercado was "part of the CDP family by virtue of the fact that [she was] longtime friends with CDP members, including CDP leadership." (RT at 6:22-7:1.) While it is true that Ms. Mercado shares a literal familial connection to Antonio Gilton, who is her longtime partner's cousin and lived in her home for a number of years as a teenager, the mere existence of this familial connection cannot establish a VICAR motive for the killing of Mr. Sneed. Prosecuting a mother because extended family members have gang ties is the kind of status crime *Banks* cautions against. *Banks*, 514 F.3d at 968 ("The VICAR statute itself contains no indication that Congress intended it to make gang membership a status offense such that mere membership plus proof of a criminal act would be sufficient to prove a VICAR violation."). The VICAR statute does not criminalize personal or family relationships with alleged gang members. Here, any reliance on Ms. Mercado's relationship with Antonio Gilton fails to satisfy the intent element of the VICAR statute required by Congress.

What's more, the government has presented no evidence that Antonio Gilton was seeking to increase his position in CDP, a necessary element of the government's aiding and abetting theory.

---

[5] Even if evidence suggested that Ms. Mercado then reached out to CDP to further her personal aims (which it doesn't), that wouldn't satisfy the VICAR motive element either. *See Thai*, 29 F.3d 785 (holding that side agreement between a gang lead and third-party to commit a violent act did not satisfy motive element, even though the act was related tangentially to the enterprise's activities).

*Frampton*, 382 F.3d at 223.  It was abundantly clear throughout the testimony presented that Antonio Gilton's participation in the homicide of Calvin Sneed was motivated only by personal animus, not by any gang related motive.  No witness testified that Antonio Gilton stood to gain anything from CDP based on his participation in this crime or that Antonio Gilton's reputation within CDP would suffer if he did not participate in this crime.  It would be mere speculation to presume that Antonio Gilton's failure to act in response to a relatively unknown individual from Los Angeles pimping his cousin's daughter would have any impact whatsoever on his reputation or status in CDP.  That alone justifies granting judgment of acquittal.

But for the government to satisfy its burden as to Ms. Mercado,  one must go even a step deeper into speculation to conclude that **Ms. Mercado knew** that if Antonio Gilton failed to act in response to Leticia's exploitation, his reputation or status in CDP would suffer **and** that, based on that knowledge, Ms. Mercado *intended* to facilitate Antonio Gilton's commission of the crime so that he could maintain or increase his status in CDP such that the promotion of Antonio Gilton's standing in CDP was a "substantial purpose" of her actions and "more than merely incidental." *Banks*, 514 F.3d at 969.

That's a bridge too far.  While this Court must view the evidence in favor of the prosecution, it need not make inferences based on "mere speculation dressed up in the guise of evidence." *Juan H. v. Allen*, 408 F.3d 1262, 1277 (9th Cir. 2005), *amended*, No. 04-15562, 2005 WL 1653617 (9th Cir. July 8, 2005) ("Although we must draw all reasonable inferences in favor of the prosecution, a 'reasonable' inference is one that is supported by a chain of logic, rather than, as in this case, mere speculation dressed up in the guise of evidence.").  Here, no evidence suggests that Ms. Mercado even knew Antonio Gilton was a CDP member, let alone that he acted with intent to promote his standing in CDP or that Ms. Mercado acted with that intent.

Furthermore, although the government made promises to the jury in the opening statement relating to the evidence that it would present about Ms. Mercado's alleged "CDP contacts" beyond her relationship with Antonio Gilton, the government has presented no evidence to support those assertions.  No witness has testified that Ms. Mercado was "longtime friends" with any other alleged member of CDP.  No witness has testified that Ms. Mercado had any contact with other

alleged members of CDP outside of occasional community gatherings like barbeques, holiday celebrations, and memorial services where they may have both been present. And although the government made some bold accusations in opening about Ms. Mercado being Facebook friends with alleged CDP members, throughout the course of the trial it was made clear they have no evidence that Ms. Mercado ever had a Facebook account, that the Facebook and Twitter accounts on her phone belonged to someone else, and that they have no evidence that Ms. Mercado had access to the Facebook "contacts" that were downloaded from the Facebook application during her cell phone extraction. Facebook and Twitter evidence was subsequently excluded by the Court. (ECF No. 2253.) In other words, the government presented no evidence at trial that Ms. Mercado was associated with any of these individuals, socially or otherwise.

And to the extent the government relies on Ms. Mercado's relationship with Barry Gilton to satisfy the VICAR motive element, that fails for two reasons. ***First***, there is insufficient evidence to support a finding that Barry Gilton was a member of CDP. (*See* Barry Gilton's Motion for Judgment of Acquittal, ECF No. 2270 at 6 ("The government failed to present any evidence that Mr. Gilton is, or was, a gang member.").)[6] ***Second***, there is insufficient evidence to show that Ms. Mercado knew that Barry Gilton was a CDP member or that any alleged actions he took were motivated by a desire to increase his standing in CDP and Ms. Mercado acted towards that end. *Frampton*, 382 F.3d at 223.

Viewing the government's evidence in the light most favorable to the prosecution, Ms. Mercado is no more than a mother alleged to have aided and abetted a violent crime against the pimp who exploited her juvenile daughter. This is exactly the kind personal motivation that falls outside the scope of the VICAR statute. No facts introduced at trial allow a rational juror to conclude that Ms. Mercado was substantially motivated to further CDP or its members beyond a reasonable doubt. This Court should grant judgment of acquittal as to Count Two.

### 3. Because Count Two Fails, the Remaining Counts Against Ms. Mercado Fail As Well

In Ms. Mercado's case, all Counts against her depend upon on Count Two, the VICAR

---

[6] Ms. Mercado incorporates by reference the arguments made by Barry Gilton in his Motion for Judgment of Acquittal.

count. Ms. Mercado cannot be convicted under Counts Three and Four unless she is convicted under Count Two because Counts Three and Four require the Government to establish that Ms. Mercado committed a "crime of violence." (ECF No. 31 at 10-11.) Count Two is the predicate "crime of violence," meaning that if Count Two fails so do Counts Three and Four. *Id.* Count Five cannot serve as a "crime of violence" because "18 U.S.C. § 3 does not require, as an element, the use, attempted use, or threatened use of physical force against the person or property of another." *United States v. Innie*, 7 F.3d 840, 848 (9th Cir. 1993). Count Five (accessory after the fact) also fails because the government has not introduced evidence sufficient to allow a rational juror to conclude beyond a reasonable doubt that Ms. Mercado knew a federal crime had been committed or acted with intent that anyone who committed a crime avoid arrest, trial or punishment. *United States v. Carreno-Juarez*, No. 08CR2698 BTM, 2009 WL 605077, at *3 (S.D. Cal. Mar. 9, 2009). The requisite knowledge that a crime against the United States has been committed under Count Five is predicated on the government introducing sufficient evidence to prove beyond a reasonable doubt that Ms. Mercado knew that this crime was committed for a VICAR purpose and not for purely personal reasons. Otherwise, the crime is a purely local matter and not a crime against the United States. As argued extensively above, the government has failed to prove this necessary element.

## V.    CONCLUSION

For the foregoing reasons, Ms. Mercado respectfully asks this Court to enter judgment of acquittal.

Dated: February 28, 2020                                                        Respectfully Submitted,

                                                                        */s/ Sarah Potter*
                                                          TONY TAMBURELLO
                                                          SARAH POTTER
                                                          Attorneys for Defendant
                                                          LUPE MERCADO